**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE**

| | | |
|---|---|---|
| **SHEA T. HASENAUER,** | ) | |
| | ) | |
| **PLAINTIFF.** | ) | |
| | ) | **CASE NO. _____** |
| **V.** | ) | **JURY DEMAND** |
| | ) | |
| **SPENCER FANE LLP,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

# COMPLAINT

The Plaintiff, Mr. Shea T. Hasenauer, files this Complaint against Defendant Spencer Fane LLP as follows:

## I.      INTRODUCTION

1.      At an official firm event in September 2024, an intoxicated male Partner of Defendant grabbed Mr. Hasenauer, an employee, around his neck, pulled him close, spoke about how handsome he was, and made sexually explicit comments about someone "getting his dick sucked tonight."

2.      After Mr. Hasenauer reported this sexual harassment to Defendant's Human Resources in September 2024, upon information and belief, Defendant took little or no action regarding the sexual harassment, never followed up with Mr. Hasenauer about it, never even investigated the misconduct, and did not issue any punishment or corrective actions.  The person is still a Partner of Defendant today.

3.      On this same September 2024 business trip, Mr. Hasenauer was at a dinner with co-workers. When a co-worker expressed interest in his Christian Faith,

1

Mr. Hasenauer discussed his Catholic Faith, the Bible, and traditional Catholic and biblical teachings on men, women, and marriage. Mr. Hasenauer's remarks were cordial and sincere.

4. Instead of lauding Mr. Hasenauer for confidently sharing his core beliefs and "living authentically" as Defendant encouraged its attorneys to do, a Partner of Defendant who used self-identifying gender pronouns, which is a belief opposite of Mr. Hasenauer's religious belief of gender being based on God's creation in Genesis: "God created man in his own image, in the image of God he created him, male and female he created them" (Genesis 1:27), reported Mr. Hasenauer to Human Resources.

5. Instead of correcting the Partner for this discriminatory act, Defendant's Human Resources met with Mr. Hasenauer to "chill him" from further exercising his rights.

6. Mr. Hasenauer pointed out the obvious contradiction in Spencer Fane's position and demanded that Spencer Fane apply its company policies, including for diversity, equity, and inclusion (D.E.I.), equally and uniformly to all employees. Defendant refused.

7. Defendant, the employer, was legally obligated to treat its employees equally.

8. Instead of doing so, Defendant favored certain groups of employees, including those living LGBTQ lifestyles and women, through company events, funding, promotional opportunities, company emails, opportunities to promote their

beliefs, etc., but did not provide equal treatment and equal opportunity for other groups of employees, including men, heterosexual persons, and Bible believing Christians.

9. The United States Supreme Court unanimously emphasized in 2025 that federal law makes it unlawful for an employer "**to discharge *any individual*, or otherwise to discriminate against *any individual* with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.**" *Ames v. Ohio Dept. of Youth Servs.*, 605 U.S. __, No. 23-1039 at 5 (2025) (quoting 42 U.S.C. §2000e-2(a)(1) (emphasis in original; bold added)).

10. The Supreme Court unanimously held that Title VII's disparate treatment provision protects all individuals equally: "Title VII's disparate-treatment provision draws no distinction between majority-group plaintiffs and minority-group plaintiffs." *Id.*

11. The Supreme Court has repeatedly made it clear that: "Discriminatory preference for any group" is "precisely" what "Congress has proscribed in Title VII." *Id.* at 6.

12. In September 2024, in addition to the aforementioned illegal acts, Mr. Hasenauer also reported additional instances of Defendant's discriminatory conduct directly to Defendant's Human Resources and Chief D.E.I. Officer, including Defendant's disparate treatment through its D.E.I. actions.

3

13. Spencer Fane's D.E.I. actions were unlawful. It was not a program the firm used to ensure its workplace was equal for everyone.

14. Mr. Hasenauer's reporting of illegal conduct had the full protection of the law.

15. After Mr. Hasenauer's reporting, Defendant refused to cease its illegal actions and retaliated by terminating his employment in the very next meeting on November 13, 2024.

16. Defendant stated it terminated Plaintiff's employment because Mr. Hasenauer prayed with others on two occasions, which was an express admission by Defendant of unlawful discrimination against religion.

17. This occurred shortly before the Thanksgiving and Christmas holidays and when Defendant was bound to pay about $70,000 (prorated to nearly $100,000) to Plaintiff in January 2025 for work already performed. The exact amount owed will be made known at trial.

18. Defendant declared, when celebrating LGBTQ pride month: **"[W]e want all our attorneys, staff, and clients to feel belonging and confident in living authentically." Exhibit 1, Defendant's Post for All Attorneys to Live Authentically.**

19. Defendant did not equally apply this standard to Mr. Hasenauer, who is a male heterosexual Christian with traditional Catholic Biblical beliefs.

20. Given Defendant's egregious and pervasive illegal conduct, Defendant's status as a large law firm, and the need to deter illegal discrimination,

4

including through D.E.I. actions, punitive damages to the fullest extent of the law are necessary in order to punish Defendant and deter future illegal conduct by it and other employers.

## II.    PARTIES

21.    Plaintiff Shea Hasenauer is a natural person domiciled in Tennessee.

22.    Defendant Spencer Fane LLP ("Spencer Fane") is a Missouri entity with hundreds of employees (including dozens in Tennessee both now and at the times herein), hundreds of millions of dollars in annual revenue, and its domicile in at least the 16 states of its partners, including Tennessee, and Washington, D.C.  It is understood to be MO Charter PL001410853 and TN Control 001242726.

## III.    JURISDICTION

23.    Subject matter jurisdiction exists via 28 U.S.C. § 1331 for the federal questions and 28 U.S.C. § 1367 for the other claims.

24.    Personal jurisdiction exists because Defendant is domiciled in Tennessee where it has continuous and systematic business contacts and actions giving rise to the claims occurred in this judicial forum.

25.    Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant resides in this judicial district and a substantial part of the actions giving rise to the claims occurred in this judicial district containing the Nashville office of which Plaintiff worked.

5

## IV.  FACTUAL BACKGROUND

### A. Mr. Hasenauer's Work Product, Accomplishments, and Recognitions

26.    Plaintiff is an excellent attorney with over eight years of civil litigation experience.

27.    His employment with Defendant began on October 1, 2021.

28.    His three annual employment reviews with Defendant were all excellent and not a single behavior or work issue was even mentioned.

29.    The three Partners who worked closest with Plaintiff during his employment all had glowing reviews of his work and recommended him for promotion to Partnership.

30.    The Tennessee Supreme Court named Plaintiff an Attorney for Justice multiple times.  According to Defendant's press release, only three of Defendant's Tennessee attorneys (less than 10%) earned this pro bono recognition in 2022. **Exhibit 2, [Shea Hasenauer, Andrea Perry, and Stephen Zralek Recognized on 'Attorneys for Justice' List – Spencer Fane.](#)**

31.    Defendant celebrated when Mid-South Super Lawyers selected Plaintiff as a Rising Star with "no more than 2.5% of lawyers in the state" receiving this recognition in 2023.  **Exhibit 3**, **[Mid-South Super Lawyers 2023 Recognizes Seven Nashville Attorneys – Spencer Fane.](#)**

32.    Defendant promoted Plaintiff to Senior Associate at the beginning of 2024, which was the final step before Partnership.

33.     Defendant included Plaintiff in informational meetings about Partnership in 2024.

34.     Even before he was a Partner, Defendant entrusted Plaintiff with Partner level responsibility.  Plaintiff was lead counsel in over 100 matters, which Defendant's General Counsel admitted was something that doesn't happen with Spencer Fane Associates.

35.     Plaintiff also led a litigation team of four persons.

36.     Only about two weeks before the illegal termination, one of Defendant's top revenue Partners praised Plaintiff's work and gave him highest recommendations when a motion he drafted was granted for a top client of the firm.

37.     A paralegal for another of Defendant's top clients remarked that Defendant would have lost the client if not for Plaintiff.

38.     The year 2024 was on pace to by far be Plaintiff's best revenue year with Defendant.

## B. Defendant's Official Policies of Diversity, Equity, and Inclusion for All

39.     Defendant represented itself as a company that provided diversity, equity, and inclusion ("D.E.I.") so that all of its employees would be treated equally.

40.     Defendant stated on its official LinkedIn page that it wanted all of its attorneys to feel confident living authentically: https://www.linkedin.com/posts/spencer-fane-llp_pridemonth-activity-7072614659563941888-1Vgz/.



**Spencer Fane LLP**
9,745 followers
1yr • 🌐

At Spencer Fane, we are proud to join the world in celebrating the LGBTQ+ community and promoting acceptance during #PrideMonth. As a firm that values diversity and inclusion, ==we want all of our attorneys==, staff, and clients ==to feel belonging and confident in living authentically.==

41.     Defendant's website proudly stated:

**Diversity, Equity, and Inclusion. Inclusion lifts us all. We're all in. The more diverse, equitable, and inclusive we are, the better equipped we become** to rise above challenges and add new, creative and fresh perspective to the problems we solve. The important work to advance DEI at Spencer Fane is **a shared passion. Exhibit 4, https://www.spencerfane.com/dei/**.

42.     Firm Chairman Pat Whalen stated on the official company website:

At Spencer Fane, we believe diversity, equity, and inclusion are **fundamental principles essential** to the firm and our client's successes. **We foster and develop a diverse array of attorneys** and professional staff **who bring varied ideas and perspective** to our clients' complex legal challenges. *Id.*

43.     Defendant proclaimed that its mission was "to build, maintain, and leverage **a diverse and inclusive law firm** that strengthens our clients and communities." *Id.*

44.     Defendant stated that it implemented this mission by educating and "providing **opportunities for discussion**" of varied perspectives. *Id.*

45.     Defendant had a D.E.I. Committee to ensure employees were "able to engage, learn, and grow with the company" and make "a diverse and inclusive law firm." *Id.*

8

46.     In 2024, Defendant hired Latricia Shepard ("Shepard") as Chief Talent & Diversity Officer ("Chief Diversity Officer") "with the aim of advancing the firm's commitment to **further differentiating its culture**." [Spencer Fane Welcomes Chief Talent & Diversity Officer Amid Marked Investments in Talent Development, DEI Leadership, and Individual Growth - Spencer Fane](#).

### C. Defendant's Hypocrisy and Misrepresentations

47.     Defendant's Firm Handbook stated the following, which Defendant did not uphold (Firm Handbook, P. 3, Edition last updated April 2021):

## Diversity & Inclusion

At the Firm, we believe that promoting diversity and inclusion goes hand in hand with providing excellent client service and maintaining an enjoyable and collaborative work environment. Therefore, we seek to attract, develop and retain not only a workforce of well-qualified attorneys and employees, but also individuals with ==unique life experiences, beliefs, backgrounds, capabilities, perspectives, personalities, and other invaluable attributes.==

In support of our commitment to diversity and inclusion, we seek to foster and support individuals who ==bring varied ideas and perspectives to our workplace==. We strive to cultivate an inclusive environment that allows our attorneys and employees to ==fully integrate== within the Firm. We believe that acting on these principles enhances our ability to develop innovative legal solutions, deliver the services our clients need, provide our workforce with a respectful and welcoming work environment, and engage the communities in which we serve.

48.     Defendant repeatedly violated the law and its own policies with regard to Plaintiff.

49.     Instead of treating Plaintiff consistent with Defendant's own official policies and legal duties, Defendant was discriminatory, retributive, and vindictive toward Plaintiff.

50.     Instead of diversity, equity, and inclusion, Defendant acted with discrimination, inequity, and exclusivity toward Plaintiff and his traditional Catholic-Christian Biblical beliefs.

9

51. Defendant falsely represented that Plaintiff could live authentically as himself and receive equal treatment, but Defendant failed to uphold this promise.

52. This was an ongoing false representation by Defendant.

53. Defendant was bound by the law and company policy to provide Plaintiff, a Christian man with traditional Catholic Biblical beliefs who identifies as a heterosexual male, equal treatment as all other similarly situated employees and protected classes received.

54. Defendant did not fulfill its duties to Plaintiff.

## D. Defendant Did Not Treat Plaintiff Equally and Discriminated Through D.E.I. Actions

55. In September 2024, at a recreational dinner with co-workers – meaning people were free to discuss topics of their choosing – many spoke of football, family life, mundane things, etc.

56. Plaintiff chose to share his Catholic-Christian Faith and Biblical beliefs with a co-worker, including on hearing God's Voice and the traditional Catholic and Biblical teaching on marriage.

57. In violation of the law and company policy, one of Defendant's Partners negatively singled out Plaintiff by reporting him for sharing his religion and creed at the dinner.

58. This Partner's beliefs differed from Plaintiff's religion and creed including that Plaintiff believes God assigns genders at birth as shown in Genesis 1-2, but this Partner used self-identifying gender pronouns.

10

59. Instead of correcting the Partner for negatively singling out Plaintiff and protecting Plaintiff's rights as Defendant was obligated to do, Defendant refused to take corrective measures against its Partner.

60. Even after Plaintiff emailed Defendant's Human Resources expressly requesting that Defendant protect his rights, Defendant still refused to take action:

> I make the Sign of the Cross and prayer over my food to begin my meals, including in public. I had two very good conversations about God at that dinner.
>
> The people in this firm speak about and act on their strongest beliefs – many of which are against my religious beliefs. Why would the partners think it is in any way proper to single me out for speaking about my faith, especially at dinner, an action by them which clearly violates the diversity, equity, and inclusion principles? Did HR immediately and strongly tell them that is inappropriate? I've been a man of faith the entirety of my three years here and the six years total, when dating back to our firm that merged in.
>
> That leads to my feedback on how Christians who believe the Bible have been treated differently. One attorney already left the firm because of this. . .
>
> Have a wonderful evening and hopefully this is respectfully resolved tomorrow by upholding my religious beliefs and the right to live them at SF while others share and live out their beliefs. **Exhibit 5, September 2024 Email About Unequal Treatment**

61. On or about September 13, 2024, Plaintiff met with Defendant's Human Resources Manager and Chief Diversity Officer. Plaintiff again requested that Defendant protect his rights and provide him equal treatment, but Defendant refused to do so.

62. Plaintiff also reported how Defendant allowed and even facilitated many things directly against his Christian Biblical beliefs – such as regarding

gender, sexuality, morality, profanity, drunkenness, and blaspheming God's Name –
in the workplace and at work events, which Defendant did not do against other
protected classes.

63. Plaintiff also reported how Bible believing Christians were not treated
equally under Defendant's D.E.I. program and he requested equal treatment.

64. Instead of protecting Plaintiff's rights and correcting its own
wrongdoing, Defendant tried chilling Plaintiff from further exercising his rights in
the future.

### E. Partner's Illicit Conduct and Defendant's Refusal to Take Corrective Action

65. At a firm wide event in September 2024 with many of Defendant's
leaders, Partners, and its Human Resources Manager present, a Partner grabbed
Plaintiff around the neck, made remarks about how handsome he is, made illicit
comments, and said someone was getting his penis sucked that night.

66. This took place on an open floor during Defendant's official company
event and the host venue's staff had to eventually escort the Partner away because
he was so intoxicated.

67. Plaintiff reported this event to Defendant's Human Resources Manager
Stephen Flanery and stated that Defendant's culture facilitated such wrongful
conduct, including by providing the alcohol for such drunkenness, which was
common at Defendant's company events.

68. Plaintiff reported this to Defendant so that Defendant would take
corrective actions to eliminate all such wrongful conduct from the company.

69.     Plaintiff followed the law and the company's reporting policy for reporting illegal conduct to Human Resources (Firm Handbook, P. 4):

> The Firm also prohibits retaliation against any individual who makes a good faith complaint of discrimination, opposes actions or practices that violate the anti-discrimination laws, or participates in any internal or external investigation of a complaint of discrimination whether by the Firm or a government agency.
>
> Any individual who believes this policy has been violated is to immediately contact either:
>
> 1. The Firm's Human Resources Department
>
> 2. Any member of the Firm's Diversity and Inclusion Committee

70.     Defendant showed little or no interest, never followed up with Plaintiff about this important matter, never updated Plaintiff of any corrective action that was taken, and did not terminate the person.  Yet, Defendant terminated Plaintiff for praying after he reported this and other illegal conduct.

71.     In addition to the law, Defendant violated its own company policy by not immediately and fully investigating this clear violation by a Partner against an employee and not taking corrective action, which Defendant guaranteed in the Firm Handbook that it would do (Firm Handbook, P. 4).

> Complaints under this policy will be promptly investigated (normally by or at the direction of the Human Resources Department or In-Firm Counsel). Confidentiality will be maintained to the extent reasonably possible and to the extent consistent with a thorough and impartial investigation.
>
> If the Firm determines that unlawful discrimination, unlawful retaliation, or any other inappropriate behavior has occurred, appropriate corrective or remedial action will be taken, up to and including termination of employment, expulsion from the Firm partnership, or discontinuing representation of a client who has engaged in unlawful discrimination.

## F. Defendant Retaliated Against Plaintiff

72.     After Plaintiff reported the illegal conduct by the Partner and other illegal matters, including Defendant's illegal D.E.I. actions, Defendant responded by illegally terminating him in the very next meeting.

73. Using reason, this was illegal retaliation that violated the law and Defendant's express company policy (Firm Handbook, P. 5):

**Prohibition of Retaliation**

In addition, this policy also prohibits retaliation or adverse employment action against any employee or partner who, in good faith, files a complaint under this policy, objects to any conduct that is unlawful, cooperates with any internal or external investigation by the Firm or any government agency, or otherwise pursues his/her legal rights under anti-discrimination or anti-harassment laws.

## G. Defendant's Egregiously Discriminatory Disparate Treatment

74. Defendant was obligated by the law and its own policies to treat its employees equally and not provide favorable treatment to certain groups but not others.

75. Defendant did not treat Plaintiff, a Christian, heterosexual, male, the same as all other similarly situated persons and protected classes.

76. Defendant used firm wide emails, company resources, events, and many thousands of dollars to repeatedly promote certain classes of people but did not to the same for others. This was illegal disparate treatment.

77. Defendant did many initiatives and spent thousands of dollars to promote LGBTQ employees and their beliefs, but did not do the same for heterosexual persons to promote their beliefs. Defendant promoted many things directly contrary to Christian Biblical beliefs, but did not equally promote Christian Biblical beliefs. Defendant did many initiatives and spent many thousands of dollars specifically for women employees and women events, but did not do the same specifically for men.

14

78. Some of many examples include that Defendant celebrated Transgender Awareness Month to "increase the visibility of transgender people" and had a Partner speak about "transition[ing] later" in life:



79. Defendant had an official company event on transgender student and employee rights: https://www.spencerfane.com/insight/transgender-student-and-employee-rights-what-we-know-and-dont-know/.

80. Defendant hosted events for LGBTQ professionals: https://www.spencerfane.com/insight/lgbtqia-awareness-and-allyship-for-legal-professionals/.

Back to Insights

LGBTQIA+ Awareness and Allyship for Legal Professionals

June 11, 2024
12:00 p.m. – 1:00 p.m. CDT

View the event recording

81. Defendant celebrated International Women's Day and Women's Month: https://www.spencerfane.com/insight/spencer-fane-celebrates-international-womens-day-with-sarah-thomas/?pdf=post. https://www.spencerfane.com/insight/celebrating-womens-history-month-influential-female-lawyers-in-history/.

Back to Insights

Spencer Fane Celebrates International Women's Day with Sarah Thomas

March 22, 2024

Back to Insights

Celebrating
Women's History
Month: Influential
Female Lawyers in
History

March 9, 2023

82.    Defendant officially promoted "Transgender Day of Visibility" on its LinkedIn page, celebrated "the achievements of our transgender and nonbinary community," and showcased an attorney who "advocates for" the "trans and LGBTQIA+ community":



83.    Defendant promoted "LGBTQ Pride Month," was "proud to join the world in celebrating the LGBTQ community" and promoted "acceptance during #PrideMonth." The post below highlighted a Spencer Fane attorney as President of

the Dallas chapter of "the nation's largest organization dedicated to supporting, educating, and advocating for LGBTQ+ people":



84. Defendant promoted a Partner's recent article it called "a shining example of the impact loud support and celebrations of our #LGBTQIA professionals creates." The attorney listed the favorite part of "Pride" as "getting a lot of parents of transgender kids participating in Pride," which is "really important in getting acceptance of lesbian and gay people," because the way to people's hearts is "really with their children and grandchildren."



85. Here was Defendant holding more pride celebrations and discussions:

https://www.spencerfane.com/insight/spencer-fane-hosts-2023-pride-
celebration/?pdf=post.



**SpencerFane**

## Spencer Fane Hosts 2023 Pride Celebration

Spencer Fane was pleased to welcome special guest Brad Pritchett, Field Director of Equality Texas, to speak at the firm's second annual Pride celebration on June 28.

Austin Office Managing Partner and DEI Committee member Bill Hopkins led a discussion with Brad as he shared insights gained from his advocacy efforts and driving cultural change in Texas. Topics included the reclamation of the word "queer" to "disempower bigotry," the importance of intersectionality, and how each generation of activists can get involved and stay motivated.

"We know that progress is possible," Brad said with regard to pushing forward despite setbacks. "If we're not fighting the fight, who is?"

19

https://www.spencerfane.com/insight/spencer-fane-holds-2024-pride-celebration-and-discussion/



86.     Here was Defendant further promoting certain groups but not others: https://www.spencerfane.com/insight/spencer-fane-joins-the-mid-america-lgbt-chamber-of-commerce/



87.     Defendant proudly sponsored the "Lavender Conference" as "the largest LGBTQ+ legal conference in the country":

Back to Insights

Spencer Fane
Sponsors 2023
Lavender Law
Conference & Career
Fair

August 7, 2023

88.     Defendant created three special connect groups to promote certain groups, including women and those living LGBTQ lifestyles: https://www.spencerfane.com/dei/.

89.     Defendant allowed and even promoted some attorneys sharing their personal beliefs, including about sexuality, both inside and outside of the workplace, including to other members of the Bar.  For example:





90.     While Defendant favored certain persons and groups with many thousands of dollars, special events, companywide emails, Defendant's resources and firm support to specifically promote them, Defendant did not even celebrate a companywide Christmas or Easter event for Christians.

91.     While Defendant actively promoted certain persons and groups' beliefs, Defendant negatively treated Plaintiff for sharing his Catholic Faith at dinner.

92.     Defendant actively promoted other groups' beliefs via emails, but discriminatorily had Human Resources speak to Plaintiff about sending Bible verses in an email.

93.     In violation of the law and its own company policy, Defendant failed to provide Plaintiff equal treatment and opportunity to share his beliefs and perspectives and to fully live as himself.

## H.  After Plaintiff Took the Legally Protected Act of Reporting Defendant's Illegal Discrimination, Defendant Terminated His Employment

94.     In September 2024, Plaintiff took the legally protected action of reporting Defendant's illegal discrimination and requesting equal treatment.

95.     Plaintiff reported Defendant's disparate treatment to Human Resources and the Chief D.E.I. Officer and requested that Defendant use its emails, events, resources, and funding to equally treat him, which it had not done.

96.     Plaintiff also previously responded to an official company survey by stating that Defendant should have events that properly represent Christians, but Defendant did not take such actions or even contact Plaintiff to further discuss this.

97.     In 2024, Plaintiff also reported how Bible believing Christians had not been treated equally by Defendant.  While many of Defendant's events directly promoted things against Biblical beliefs, equal opportunity was not provided for those who held Biblical beliefs.

23

98. Defendant allowed or even facilitated behavior against his religion and Biblical beliefs in the workplace and at work events, such as with sexual issues, profanity, drunkenness, and blaspheming God's Name, which it did not do and would not allow for other groups. Such behavior violated Defendant's policy for making sure that Plaintiff as a Bible believing Christian was fully welcomed.

99. After making his legally protected report of Defendant's illegal conduct, Plaintiff requested that Defendant update him on its actions for ceasing its illegal conduct.

100. Defendant was legally obligated to immediately cease its illegal and discriminatory conduct, but did not do so.

101. Instead of taking the legally obligated corrective actions and updating Plaintiff on these corrective steps as requested, in the very next meeting with Plaintiff, Defendant immediately terminated Plaintiff on November 13, 2024.

102. Defendant expressly stated that the reason for termination was that Plaintiff had prayed with others on two occasions.

103. This was an express admission by Defendant of discrimination against religion.

## I. Defendant Gave Favorable Promotional Opportunities for Some Groups Only

104. On August 28, 2024 – less than 3 months before the illegal termination – Defendant began implementing the "Diversity Lab's Mansfield Rule" for certain groups (including "LGBTQIA+" and "women" lawyers) to "advance into leadership and other career advancement opportunities," but it did not equally favor Plaintiff

24

and his legally protected statuses. https://www.spencerfane.com/insight/spencer-fane-kicks-off-diversity-labs-mansfield-rule-certification-process/.



← Back to Insights

**Spencer Fane Kicks Off Diversity Lab's Mansfield Rule Certification Process**

August 28, 2024

105. As mentioned, the three Partners who worked closest with Plaintiff all recommended him for promotion to Partnership, which he was being considered for in 2024.

106. Plaintiff took the legally protected action of reporting illegal conduct and requesting equal treatment only a couple of weeks after Defendant began the Diversity Lab's Mansfield Rule for promotions.

107. Instead of promotion, Defendant illegally terminated his employment.

108. When Defendant announced its next Partnership promotions in January 2025, Defendant promoted at least five attorneys to Partnership that were more junior to Plaintiff as judged by their law school graduation year. https://www.spencerfane.com/insight/spencer-fane-elects-13-new-attorneys-to-partnership-in-2025/.

### J. Defendant's Sham "Investigation" and Lack of Warnings or Remedial Steps

109. Defendant's own policy stated that Defendant would undertake "an objective and thorough investigation" and appoint an outside investigator if needed.

25

The policy also sets forth the standard norm for interviewing the person who made the report and accused person (Firm Handbook, P. 8). Defendant violated the law and its own policy both with how it treated the illegal conduct Plaintiff reported and by not following the company's own standards before terminating his employment:

**Investigation**

Upon receipt of a report or complaint, the Firm (normally the Human Resources Department) will promptly address the matter and will, if necessary, undertake an objective and thorough investigation (conducted by the Human Resources Department or its designee or at its direction by an outside investigator). The investigation will generally include interviewing the individual who reported or was subjected to the harassment, the alleged harasser, and potential witnesses, as well as reviewing documents and other materials.

110. Defendant did not conduct "objective and thorough investigations" of the illegal conduct Plaintiff reported.

111. Since this conduct, especially through the illegal D.E.I. actions, directly involved Human Resources, an outside investigator should have been appointed.

112. Before deciding to terminate his employment on November 13, 2024, Defendant never even interviewed Plaintiff about the purported wrongdoing of praying (a legally protected action), in violation of Defendant's standard process.

113. In the termination meeting, Defendant did not even disclose what the two times of prayer were to Plaintiff.

114. Defendant did not immediately terminate all purported wrongdoers – though Plaintiff did nothing wrong and exercised his legal rights – without even speaking to them as part of an investigation, like Defendant did to Plaintiff.

26

115.    Defendant also did not immediately terminate all similarly situated persons without warnings (no warning was ever given for praying, which is a legally protected action) or remedial steps.

116.    This was illegal discrimination.

117.    Defendant's sham "investigation" and termination decision was highly biased because the very people who were obligated to correct Defendant's illegal conduct, including illegal D.E.I. actions, after receiving the legally protected report from Plaintiff, namely the Chief Diversity Officer, Human Resources Manager, and General Counsel, were persons who oversaw these illegal actions and thus had their careers highly invested in them.

118.    The Chief Diversity Officer promoted the D.E.I. program, Human Resources Manager Flanery was heavily involved in it and represented Defendant at "the largest LGBTQ+ legal conference in the country," and Defendant's illegal actions meant General Counsel Leslie Greathouse, who presented for Defendant's pride month, did not properly fulfill her role. https://www.spencerfane.com/insight/spencer-fane-sponsors-2023-lavender-law-conference-career-fair/.                          https://www.spencerfane.com/wp-content/uploads/2024/05/Spencer-Fane-2023-DEI-Report.pdf.

- **Juneteenth:** Kristen Walker and Brittainy Joyner
- **Pride Month:** Jim Patterson, Leslie Greathouse, and Joe Bednar
- **Disability Pride Month:** Taylor Hayslett and Clint Armistead

119.    Rather than admit to and correct their own wrongdoing, which could hurt Defendant and their careers, it was much more convenient to terminate Plaintiff.

120.    For a full and fair investigation, Defendant was obligated to hire an outside investigator as the Firm Handbook stated because Plaintiff took the legally protected action of reporting illegal conduct that directly implicated Defendant and the persons who conducted the sham investigation of him.

121.    Defendant did not conduct all investigations of similarly situated persons with the "investigators" having enormous conflicts of interest.

**K. Hostile Work Environment**

122.    Defendant created a hostile work environment for those with Christian Biblical beliefs so much so that some attorneys left Defendant.

123.    Defendant regularly and officially promoted beliefs directly contrary to the Bible and did not provide those with Biblical beliefs equal opportunities, which directly contradicted Defendant's policy to provide "opportunities for discussion" of "varied ideas and perspective." *See* Chairman Whelan on employer's D.E.I. Page: https://www.spencerfane.com/dei/.

124.    Another egregious example was when a shooter living the transgender lifestyle tragically murdered six people at the Christian Covenant School in Nashville, yet Defendant did not cease promoting transgenderism in the workplace.  Defendant did even not ask Plaintiff (a Christians in the Nashville office or, upon information and belief, other Christians with Biblical gender and

sexuality beliefs in the Nashville office) about Defendant promoting transgenderism in the workplace after these murders.

125. As shown by its D.E.I. events, included ones included herein, Defendant instead pushed transgenderism even harder in the workplace, including in the Nashville office. *See, e.g., Nashville school shooting: 6 killed including 3 students, shooter dead* [https://www.foxnews.com/us/nashville-school-shooting-6-killed-including-3-students-shooter-dead](https://www.foxnews.com/us/nashville-school-shooting-6-killed-including-3-students-shooter-dead); *Covenant School trans shooter plotted Nashville attack for years, kept notebook for plans: final report*: [https://www.fox13seattle.com/news/covenant-school-shooter-plotted-nashville-attack-years](https://www.fox13seattle.com/news/covenant-school-shooter-plotted-nashville-attack-years).

126. Defendant did not and would not treat other legally protected groups this way.

### L. Defendant Violated Tennessee Employment Security Law Rule 0800-09-01-.02

127. Tennessee law required Defendant to have an official representative sign and certify "the circumstances of this separation" and "the reasons for separation" in writing and provide the official Separation Notice to Plaintiff within 24 hours of the termination. Defendant violated the law by never doing this: [https://www.tn.gov/content/dam/tn/workforce/documents/Forms/LB-0489.pdf](https://www.tn.gov/content/dam/tn/workforce/documents/Forms/LB-0489.pdf).



STATE OF TENNESSEE
DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT
DIVISION OF EMPLOYMENT SECURITY

## SEPARATION NOTICE

If other than lack of work, explain the circumstances of this separation:

Employer's Name: _____

I certify that the above worker has been separated from work and the information furnished hereon is true and correct.
**This report has been handed to or mailed to the worker.**

| Signature of Official or Representative of the Employer who has first-hand knowledge of the separation | Title of Person Signing | Date Completed and Released to Employee |
|---|---|---|
| _____ | _____ | _____ (mm/dd/yyyy) |

**NOTICE TO EMPLOYER**
Within 24 hours of the time of separation, you are required by Rule 0800-09-01-.02 of the Tennessee Employment Security Law to provide the employee with this document, properly executed, giving the reasons for separation. If you subsequently receive a time sensitive request for separation information for the same information please give complete information in your response.

128. The only detailed exchange between the parties recapping the termination was when Plaintiff emailed a recap to Defendant's Chairman, General Counsel, and Human Resources Manager on September 13, 2024 stating the illegal reasons for termination. **Exhibit 6, Termination Summary Email.**

> It is wrong that you have taken this action against my religious Faith. Two months ago, I complained to Human Resources in detail (see my Sept. 13 meeting notes below and the discussion that took place at the meeting) about how my Faith has not been included in this firm, in direct violation of firm policies of diversity, equity, and inclusion and the law. Today, you terminated my employment because you stated that I prayed with two people. For more than 3 years at Spencer Fane and the 6 years since joining Bone McAllester, which merged in, I have always lived my religious beliefs in the office, outside the office, and everywhere in my life. The Bible calls this "in season and out of season" (2 Timothy 4:2).

30

I already informed you that a Texas attorney left the firm due to its hostility toward Biblical Christian beliefs and, just this week, two more of my Tennessee colleagues approached me about the firm's actions, which have repeatedly been against our Christian Biblical beliefs. These two attorneys are thinking of leaving. Multiple staff members have the same concerns and are in fear of retribution or losing their jobs if they act. . .

You have taken zero actions to accommodate and welcome my religious Faith since our September meeting and, in fact, it has gotten worse, culminating with today. I again remind you that my religious beliefs and those of your entire staff are protected with the utmost legal protection. Only yesterday, a Catholic woman in my birth state of Michigan received a $13 million award because her employer violated her religious beliefs regarding a vaccine: Link - Catholic woman fired for refusing COVID vaccine awarded nearly $13M by Michigan court. Colleagues are already shocked at your action and multiple have suggested that I seek legal counsel. In particular, women I work with are angry and one shared that she cried because of the news.

The assertion that you completed an "investigation" is a total farce. It is impossible because you didn't even interview the other side: Me. You told me today that since our September meeting you received two so-called "reports." Yet, you provided zero information about who, what, when, where, or why. I have no idea what you're speaking about. You only mentioned that I prayed with a fellow attorney at our retreat and that I prayed with a non-firm person at some point in time. But you refused to provide any detail or let me know what purportedly happened. That is wrong. It is also a clearly hypocritical standard that this firm has taken many official actions against my Faith and that offend my religious beliefs, yet when I exercise my religion and pray with someone who didn't even tell me not to pray with the person or state that it is unwelcome, you take action against me.

I have prayed throughout my entire life and when I pray for others, it's with good reason. I've never in my entire life touched anyone inappropriately, so that never happened when praying and you did not even let me know what was purported. As I mentioned before, we have good relationships with multiple clients due to my religious beliefs. I've prayed with clients multiple times throughout the years. No one (client or co-worker) has ever said no or indicated to me that they refused or that it is unwelcomed. This year, my hearings have almost exclusively been on Zoom. In fact, the only in-person hearing with a client was a

31

Bible producing ministry and we always pray together before our hearings. They are shocked that you have taken this action against me. So, the vague, detail-lacking purported actions of praying with people are what you mentioned today. You provided zero adequate opportunity for me to even know what happened, let alone respond. I've been singled out for living my Faith, which praying for others certainly is. . .

To discriminate against my religion and then tell me today that you do not intend to pay all of the compensation I worked for is egregious. Additionally, as you well know, I was right on the precipice of partnership and the main attorneys I've worked for (and their clients) over the last few years, including Scott Dickenson, Jason Medley, Jonathan Burns, and their clients, have been profuse in their praise for my work. So, you can imagine what your action does toward that career trajectory. I take great comfort in that when Jesus comes back to judge the living and the dead (2 Timothy 4:1) – and He will soon – I will be very proud that I stood for Him and obeyed Him through every moment of this.

**M. Punitive Damages to the Fullest Extent of the Law Are Needed**

129. Defendant is a large law firm with hundreds of attorneys and reportedly over $320 million in annual revenue. https://www.law.com/law-firm-profile/?id=10042&name=Spencer-Fane-Britt-%26-Browne.

130. Despite knowing that illegal discrimination is wrong, Defendant discriminated anyway.

131. Plaintiff warned Defendant multiple times that it was discriminating against him, but Defendant still illegally terminated his employment.

132. Large companies and especially law firms committing illegal discrimination, including through D.E.I. programs, is a huge issue.

133. In March 2025, the U.S. Equal Employment Opportunity Commission (E.E.O.C.) and U.S. Department of Justice released documents against unlawful

D.E.I. discrimination. [EEOC and Justice Department Warn Against Unlawful DEI-Related Discrimination | U.S. Equal Employment Opportunity Commission](#).

134. In July 2025, the U.S. Attorney General issued a Memorandum warning recipients of federal funding against unlawful D.E.I. programs saying: "One of our Nation's bedrock principles is that all Americans must be treated equally. Not only is discrimination based on protected characteristics illegal under federal law, but it is also dangerous, demeaning, and immoral." [Memo from Attorney General Bondi: Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination](#).

135. The Tennessee Attorney General has acted to combat such discrimination that is "antithetical to the American ideal of equality." [TN AG Pushes Back on Unlawful DEI Federal Regulation](#). Attorneys General from 19 states wrote this 2025 letter to Costco to end unlawful discrimination. [Multistate Letter to Costco Sent.pdf](#).

136. In 2025, the Florida Attorney General issued a Policy Memorandum stating that large law firms are some of the worst purveyors of illegal discrimination: "Many of our nation's largest and most profitable law firms have played a substantial role in trafficking DEI, ESG, and other illegal and discriminatory initiatives into Corporate America." They overtly celebrate "discriminatory practices" and violate bedrock principles of "equal justice under law." Among other things, he mentioned discriminatory hiring and promotion practices, the Mansfield Rule, and disparate treatment in programs and

33

opportunities.

https://www.myfloridalegal.com/sites/default/files/agjulawfirmpolicy.pdf.

137.  As one of her first acts in office, the E.E.O.C. Chair sent letters of inquiry to 20 law firms to address illegal D.E.I. practices. EEOC Acting Chair Andrea Lucas Sends Letters to 20 Law Firms Requesting Information About DEI-Related Employment Practices | U.S. Equal Employment Opportunity Commission.

138.  Given the need to punish Defendant's egregious illegal conduct and to deter Defendant and other companies with hundreds of millions of dollars in revenue from similar illegal discrimination, punitive damages are needed to the fullest extent of the law.

**N. Some Categories of Defendant's Illegal Conduct**

139.  This non-exhaustive list demonstrates at least 20 categories of Defendant's illegal acts, which total hundreds of individual actions:

1.  A Partner of Defendant negatively singled out Plaintiff, an employee, for living his religion and creed at a dinner in September 2024.  This was illegal discrimination.

2.  Defendant did not terminate the Partner for this action, but terminated Plaintiff for living his religion and creed.  This was illegal discrimination.

3.  Plaintiff requested to the Human Resources Manager and Chief D.E.I. Officer in September 2024 that Defendant protect his rights under the law and company policy and correct the Partner's aforementioned act, but Defendant chose to not do so (no evidence of punishment or corrective action was provided).  This was illegal discrimination.

4.  Others spoke of their topics of choosing at the aforementioned dinner and in the workplace, but Plaintiff was singled out for sharing his religion and creed.  This was illegal discrimination.

34

5. A drunken Partner grabbed Plaintiff, an employee, around the neck, said how handsome he is, made explicit sexual statements about sucking penis, and said someone was getting his penis sucked that night. This was illegal discrimination.

6. Defendant did not punish the Partner for the above, but terminated Plaintiff for living his religion and creed. This was illegal discrimination.

7. Plaintiff spoke to the Human Resources Manager and Chief D.E.I. Officer about this illegal act in September 2024, including that Defendant (which provided the alcohol) fostered this with its culture, but Defendant took no corrective actions (no evidence of even an investigation was provided). This was illegal discrimination.

8. Hundreds of times Defendant promoted with company emails, events, internet posts, resources, and funding (especially through its D.E.I. actions) things directly opposed to Plaintiff's religion and creed, but did not equally treat Plaintiff or provide him equal opportunities to promote his opposite beliefs. This was illegal discrimination.

9. Hundreds of times Defendant promoted with company emails, events, internet posts, resources, and funding the sex, gender identity, and sexual orientation (especially through its D.E.I. actions) opposite of Plaintiff, but did not do the same for Plaintiff's protected status (heterosexual straight male). This was illegal discrimination.

10. Plaintiff reported the employer's illegal conduct to the Human Resources Manager and Chief D.E.I. Officer in September 2024 and requested equal treatment by the Defendant, but Defendant chose to not correct its illegal actions or treat Plaintiff equally. This was illegal discrimination.

11. After Plaintiff reported multiple examples of Defendant's illegal conduct to the Human Resources Manager and Chief D.E.I. Officer, Defendant retaliated by terminating Plaintiff. This was illegal discrimination.

12. Defendant permitted and / or even fostered the use of God's Name in vain, drunkenness, and profanity in the workplace and / or at company events, which are against Plaintiff's religion and creed. Defendant did not punish these people or end these actions, but terminated Plaintiff for living his religion and creed. This was illegal discrimination.

13. Defendant created a hostile work environment against Christian Biblical beliefs, so much so that people even left the company. This was illegal discrimination.

35

14. Defendant's personnel commonly communicated non-legal matters in the workplace (including family life and topics of their choosing). The employer did not punish them, but negatively treated Plaintiff for sharing his religion and creed, including through words of prayer and an email with Bible verses. This was illegal discrimination.

15. Defendant's attorneys commonly communicated with employees and members of the Bar about non-legal matters (including family life and topics of their choosing). The employer did not punish them, but terminated Plaintiff for sharing his religion and creed, including through words of prayer. This was illegal discrimination.

16. Defendant gave warnings, remedial steps, or simply did not terminate all other persons for their improper actions (including not terminating the others mentioned herein), but with zero tolerance terminated Plaintiff for living his religion and creed. This was illegal discrimination.

17. Defendant did not terminate all others without giving them an opportunity to tell fully their side of the story in an investigation, but Defendant did exactly this to Plaintiff. This was illegal discrimination.

18. Defendant promoted Associates with similar or less experience to Partnership but did not promote Plaintiff due to Defendant's illegal actions. This was illegal discrimination.

19. Defendant had biased persons investigate and recommend termination against Plaintiff, which Defendant did not do for all other similarly situated persons. This was illegal discrimination.

20. Defendant did not refuse to pay other employees approximately $100,000 (by the end of January 2025) because of Defendant's illegal termination, as it did to Plaintiff. This was illegal discrimination.

140. Defendant wrongfully injured Plaintiff's reputation, career, income, and future earnings, withheld money owed, owes back and front pay, and caused pain and suffering, hardship, inconvenience, and other damages.

141. Due to the egregiousness, pervasiveness, and overall circumstances of Defendant's repeated illegal conduct, reinstatement is not feasible in this case.

36

142.   After its investigation, on November 18, 2025 the E.E.O.C. determined that Plaintiff had the right to sue Defendant. **Exhibit 7, Right to Sue Letter.**

## V. CAUSES OF ACTION

143.   Plaintiff brings these causes of actions additionally and alternatively, as permitted by the Rules of Civil Procedure.   The illegal conduct includes both violations of the applicable law and Defendant's discriminatory application of its own policies and standards, which was likewise illegal conduct.

### 1.  TITLE VII OF CIVIL RIGHTS ACT – RELIGIOUS DISCRIMINATION

144.   All previous paragraphs are included herein.

145.   Defendant illegally terminated Plaintiff for praying, which was discrimination against religion.

146.   Defendant admitted to terminating Plaintiff for praying, which was an express admission by Defendant.

147.   A Partner reported Plaintiff for sharing his religion at dinner, which was discrimination against religion.

148.   Defendant refused to protect Plaintiff's rights and take corrective action against the Partner for his wrongdoing, which was discrimination against religion and violated Defendant's policies.

149.   Defendant let other persons and groups speak about their beliefs and live their lifestyles, including those that were directly against Plaintiff's religion, but Defendant did not let Plaintiff do this with his religion, which was discrimination.

37

150.   Defendant favored and promoted other persons and groups, including with firm wide emails, resources, events, funding, and promotional opportunities, including things that were directly against Plaintiff's religion, but did not provide equal treatment to Plaintiff with his religion.

151.   As with other claims herein, Defendant violated the law and company policy:

## Diversity & Inclusion

At the Firm, we believe that promoting diversity and inclusion goes hand in hand with providing excellent client service and maintaining an enjoyable and collaborative work environment. Therefore, we seek to attract, develop and retain not only a workforce of well-qualified attorneys and employees, but also individuals with ==unique life experiences, beliefs, backgrounds, capabilities, perspectives, personalities, and other invaluable attributes.==

In support of our commitment to diversity and inclusion, we seek to foster and support individuals who ==bring varied ideas and perspectives to our workplace.== We strive to cultivate an inclusive environment that allows our attorneys and employees to ==fully integrate== within the Firm. We believe that acting on these principles enhances our ability to develop innovative legal solutions, deliver the services our clients need, provide our workforce with a respectful and welcoming work environment, and engage the communities in which we serve.



**Spencer Fane LLP**
9,745 followers
1yr · 🌐

At Spencer Fane, we are proud to join the world in celebrating the LGETQ+ community and promoting acceptance during #PrideMonth. As a firm that values diversity and inclusion, ==we want all of our attorneys,== staff, and clients ==to feel belonging and confident in living authentically.==

152.   Defendant created a hostile work environment against Plaintiff's religion.

153.   Even after Plaintiff requested equal treatment, Defendant continued its disparate treatment and illegal discrimination.

154.   Defendant did not provide Plaintiff equal treatment in its so-called investigation and Defendant's decision to immediately terminate Plaintiff without

38

speaking to him as part of an investigation or provide warnings and remedial steps like other similarly situated persons, even though Plaintiff did nothing wrong.

155. The reasonable conclusion is that Defendant discriminated against Plaintiff on the basis of religion.

156. Defendant caused harm in an amount to be determined at trial.

## 2. TITLE VII OF CIVIL RIGHTS ACT – SEX DISCRIMINATION

157. All previous paragraphs are included herein.

158. Defendant's Partner made illicit sexual conduct against Plaintiff, an employee, at Defendant's official event.

159. Defendant failed to properly investigate this illegal conduct and did not take corrective actions.

160. Defendant also facilitated such illegal conduct and discrimination with its company culture and events.

161. Defendant is liable for all harm caused.

162. Defendant hundreds of times favored and promoted certain groups and persons, including those of the opposite sex and different gender identity and sexual orientation as Plaintiff.

163. Defendant did not favor and promote, including with firm wide emails, resources, events, funding, and promotional opportunities, Plaintiff's protected statuses as a heterosexual male equally to how Defendant promoted the opposite sex and different gender identity and sexual orientation.

39

164. Even after Plaintiff expressly requested that Defendant cease its illegal discrimination and provide equal treatment, Defendant chose to not do so.

165. Defendant did not provide Plaintiff equal treatment in its so-called investigation and Defendant's decision to immediately terminate Plaintiff without speaking to him as part of an investigation or provide warnings and remedial steps like similarly situated persons, even though Plaintiff did nothing wrong.

166. Defendant committed pervasive disparate treatment.

167. The reasonable conclusion is that Defendant discriminated against Plaintiff on the basis of sex.

168. Defendant caused harm in an amount to be determined at trial.

### 3. TITLE VII OF CIVIL RIGHTS ACT – RETALIATION

169. All previous paragraphs are included herein.

170. In September 2024, Plaintiff took the legally protected action of reporting illegal actions to Defendant and requesting equal treatment.

171. Instead of Defendant updating Plaintiff on Defendant's corrective actions for ceasing its illegal conduct, Defendant terminated Plaintiff's employment in the next meeting.

172. Defendant violated the law and company policy (Firm Handbook, P. 27):

**Protection from Retaliation**

No adverse action shall be taken against you because of a good faith report of any issue, problem, complaint, or area of concern reported to a Report Recipient.

40

173. Defendant's illegal termination is further shown in that Defendant refused to conduct a full investigation, had highly biased persons so-called investigating Plaintiff, never even spoke to Plaintiff as part of an investigation, and did not provide any warnings or remedial steps as Defendant would have done with others accused of wrongdoing.

174. Defendant thought it was much more convenient to illegally terminate Plaintiff than correct Defendant's pervasive illegal conduct.

175. The reasonable conclusion under these circumstances is that Defendant illegally retaliated against Plaintiff.

176. The exact amount of the damages caused by Defendant will be determined at trial.

## 4. TENNESSEE HUMAN RIGHTS ACT – RELIGIOUS DISCRIMINATION

177. All previous paragraphs are included herein.

178. Defendant illegally terminated Plaintiff for praying, which was discrimination against religion.

179. Defendant admitted to terminating Plaintiff for praying, which was an express admission by Defendant.

180. A Partner reported Plaintiff for sharing his religion at dinner, which was discrimination against religion.

181. Defendant refused to protect Plaintiff's rights and take corrective action against the Partner for his wrongdoing, which was discrimination against religion and violated Defendant's policies.

41

182.   Defendant let other persons and groups speak about their beliefs and live their lifestyles, including those that were directly against Plaintiff's religion, but Defendant did not let Plaintiff do this with his religion, which was discrimination.

183.   Defendant favored and promoted other persons and groups, including with firm wide emails, resources, events, funding, and promotional opportunities, including things that were directly against Plaintiff's religion, but did not provide equal treatment to Plaintiff with his religion.

184.   Defendant committed pervasive disparate treatment.

185.   Defendant created a hostile work environment against Plaintiff's religion.

186.   Even after Plaintiff requested equal treatment, Defendant continued its disparate treatment and illegal discrimination.

187.   Defendant did not provide Plaintiff equal treatment in its so-called investigation and Defendant's decision to immediately terminate Plaintiff without speaking to him as part of an investigation, providing him warnings, or providing him any remedial steps.

188.   The reasonable conclusion is that Defendant discriminated against Plaintiff on the basis of religion.

189.   Defendant caused harm in an amount to be determined at trial.

**5.  TENNESSEE HUMAN RIGHTS ACT – CREED DISCRIMINATION**

190.   All previous paragraphs are included herein.

191. Defendant illegally terminated Plaintiff for living his creed, which was discrimination against creed.

192. A Partner reported Plaintiff for sharing his creed, including with regard to God, marriage, and gender, at dinner.

193. Defendant refused to protect Plaintiff's rights and take corrective action against the Partner for his wrongdoing, which was discrimination against creed and violated Defendant's policies.

194. Defendant let other persons and groups speak about their core beliefs and live their lifestyles, including those directly against Plaintiff's creed, but Defendant did not let Plaintiff do this with his creed, which was discrimination.

195. Defendant favored and promoted other persons and groups, including with firm wide emails, resources, events, funding, and promotional opportunities, including things directly against Plaintiff's creed, but did not provide equal treatment to Plaintiff with his creed, including his creed on the same issues that Defendant promoted in the workplace, such as gender and sexuality.

196. Defendant committed pervasive disparate treatment.

197. Even after Plaintiff requested equal treatment, Defendant continued its disparate treatment and illegal discrimination.

198. Defendant did not provide Plaintiff equal treatment in its so-called investigation and Defendant's decision to immediately terminate Plaintiff without speaking to him as part of an investigation or provide warnings and remedial steps like others would have received, even though Plaintiff did nothing wrong.

43

199. The reasonable conclusion is that Defendant discriminated against Plaintiff on the basis of creed.

200. Defendant caused harm in an amount to be determined at trial.

### 6. TENNESSEE HUMAN RIGHTS ACT – SEX DISCRIMINATION

201. All previous paragraphs are included herein.

202. Defendant's Partner made illicit sexual conduct against Plaintiff, an employee, at Defendant's official event.

203. Defendant failed to properly investigate it and take corrective actions, and facilitated such illegal conduct and discrimination at this company event.

204. Defendant is liable for all harm caused.

205. Defendant hundreds of times favored and promoted certain groups and persons, including those of the opposite sex as Plaintiff.

206. Defendant promoted certain events, groups, and promotional opportunities specially for women, but not men, which was disparate treatment.

207. Defendant did not favor and promote, including with firm wide emails, resources, events, funding, and promotional opportunities, Plaintiff's protected statuses as a male equally to how Defendant promoted the opposite sex.

208. Even after Plaintiff expressly requested that Defendant cease its illegal discrimination and provide equal treatment, Defendant chose to not do so.

209. Defendant did not provide Plaintiff equal treatment in its so-called investigation and Defendant's decision to immediately terminate Plaintiff without speaking to him as part of an investigation or provide warnings and remedial steps

44

like other similarly situated persons would have received, even though Plaintiff did nothing wrong.

210. Defendant committed pervasive disparate treatment.

211. The reasonable conclusion is that Defendant discriminated against Plaintiff on the basis of sex.

212. Defendant caused harm in an amount to be determined at trial.

### 7. TENNESSEE HUMAN RIGHTS ACT – RETALIATION

213. All previous paragraphs are included herein.

214. In September 2024, Plaintiff took the legally protected action of reporting illegal actions to Defendant and requesting equal treatment.

215. Instead of the subsequent meeting being Defendant updating Plaintiff on Defendant's corrective actions for ceasing its illegal conduct, Defendant immediately terminated Plaintiff's employment.

216. Defendant violated the law and company policy (Firm Handbook, P. 28):

**Protection from Retaliation**

No adverse action shall be taken against you because of a good faith report of any issue, problem, complaint, or area of concern reported to a Report Recipient.

217. The reasonable conclusion under these circumstances is that Defendant illegally retaliated against Plaintiff.

218. Defendant's illegal termination is further shown in that Defendant refused to conduct a full investigation, had highly biased persons so-called investigating Plaintiff, never even spoke to Plaintiff as part of an investigation, and

did provide any warnings or remedial steps as Defendant would have done with others accused of wrongdoing.

219. Defendant thought it was much more convenient to illegally terminate Plaintiff than correct Defendant's pervasive illegal conduct.

220. Defendant caused harm in an amount to be determined at trial.

## 8. BREACH OF CONTRACT

221. All previous paragraphs are included herein.

222. Both parties entered into a binding agreement with certain duties and responsibilities. Among these were that Plaintiff would provide legal work, which he dutifully did, and Defendant would justly compensate for all work performed, provide Plaintiff treatment and opportunities equal to those other employees received, and uphold the laws and its own company policies in Defendant's treatment of Plaintiff.

223. Defendant violated the contract by not acting in good faith.

224. Defendant failed to pay Plaintiff a prorated amount of nearly $100,000 (with the exact amount to be made known at trial) for work Plaintiff performed.

225. Defendant failed to pay Plaintiff because of Defendant's own illegal conduct.

226. Defendant breached the terms of Plaintiff's employment, including the material terms that Plaintiff would be able to be his authentic self, receive equal treatment and opportunities, and have the law and Defendant's policies equally applied to him.

227. Defendant repeatedly materially breached the contract while Plaintiff dutifully provided all of his services due under the contract.

228. Defendant's breach injured Plaintiff in an amount to be determined at trial, including by Defendant unlawfully causing harm to his reputation, income, and career.

## 9. FRAUDULENT MISREPRESENTATION

229. All previous paragraphs are included herein.

230. Defendant made fraudulent misrepresentations in order to induce Plaintiff's work and services.

231. Defendant materially misrepresented that Plaintiff would be free to live as his authentic self, including his religion (which includes prayer, evangelization, and core beliefs) with Defendant.

232. Defendant materially misrepresented that Plaintiff would be equally treated and have equal opportunities as other employees were given.

233. Defendant's misrepresentations were constant and ongoing.

234. Upon information and belief, Defendant knew these misrepresentations were false at the time Defendant made them and had no intention to keep them with regard to Plaintiff.

235. These were material misrepresentations that induced Plaintiff's services, Plaintiff relied on Defendant's false representations, and Plaintiff would never have worked for Defendant if Plaintiff knew these were false.

236.   Defendant's fraudulent misrepresentations severely injured Plaintiff's career, reputation, and income trajectory.

237.   Defendant caused harm in an amount to be determined at trial.

## 10.  UNJUST ENRICHMENT

238.   All previous paragraphs are included herein.

239.   Plaintiff provided substantial material benefits, namely in the form of work performed, to Defendant valued at many thousands of dollars, with the exact amounts to be determined at trial.

240.   Defendant retained these benefits without compensating Plaintiff for them.

241.   It is unjust for Defendant to retain the value of these benefits without justly compensating Plaintiff.

242.   For any matter not fully adjudicated by a contract or other claim, Defendant should have to pay Plaintiff due to unjust enrichment with the exact amount to be determined at trial.

## REQUESTS FOR RELIEF AND JURY DEMAND

### Plaintiff hereby demands a 12-person jury of his peers

Plaintiff respectfully requests that the Court enter an award of:

1. Compensatory damages of at least $30,000,000 with the exact amount to be determined by the jury, with back pay, and front pay, lost future earnings, reputational harm, inconvenience, and compensatory damages caused by Defendant's illegal actions with the exact amount to be determined by the jury. Due to the egregiousness, pervasiveness, and overall circumstances of Defendant's illegal conduct, reinstatement is not feasible in this case.

2. Punitive damages to punish Defendant and deter Defendant and other similar companies from future illegal conduct in the greater amount of Defendant's best year of annual gross revenue or $325,000,000 with the exact amount to be determined by the jury.

3. At least $98,095.56, with the exact amount to be determined at trial, in compensation for unpaid work performed.

4. Pre-judgement interest, post-judgment interest, costs, and attorney fees as required by law.

5. An injunction to stop Defendant's illegal actions and correct them in the future.

Respectfully Filed:

Jesse Montagnino, Esq., TN Bar No. 030603
The Montagnino Firm
PO Box 210592
Nashville, TN 37221-0592
JesseMontagnino@gmail.com
Phone: (629) 600-5377
Fax: 615.285.8105

Victor Bermudez, Esq., FL Bar No. 010344
(*Lead Counsel Upon Pro Hac Vice Admission)
McIntyre & Bermudez PLLC
1520 Royal Palm Square Blvd, Suite 210
Fort Myers, FL 33919-1053
victor@mbcounsel.com
Phone: (239) 365-5535

*Attorneys for Plaintiff Mr. Shea T. Hasenauer*

50